IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURA CHUNG,

                Plaintiff,                CV-08-1480-ST

      v.                             FINDINGS AND
                                        RECOMMENDATION

STRATEGIC DECISIONS GROUP, a foreign
corporation,

                Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Laura Chung, filed this action against defendant, Strategic Decisions Group, Inc., ("SDG"), on October 8, 2008, in Multnomah County Circuit Court as Case No. 0810-14316, alleging claims for gender and marital status discrimination under ORS 659A.030(1)(a). SDG timely removed that action to this court on December 29, 2008, based on diversity jurisdiction under 28 USC § 1332. After this court granted SDG's motion to

1 - FINDINGS AND RECOMMENDATION

dismiss, Chung filed a second Amended Complaint on May 1, 2009 (docket #26) alleging one claim for sex discrimination under Oregon law.

SDG has filed a Motion for Summary Judgment (docket #33), contending that Chung's claim is barred by the one-year statute of limitations under ORS 659A.875(1). For the reasons set forth below, that motion should be granted and judgment should be entered in favor of SDG.

## LEGAL STANDARD

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986); *Fairbank v. Wunderman Cato Johnson*, 212 F3d 528, 531 (9th Cir 2000). Once the moving party does so, the nonmoving party must "set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Horphag Research Ltd. v. Garcia*, 475 F3d 1029, 1035 (9th Cir 2007) (internal quotation marks and citations omitted). The court must "not weigh the evidence or determine the truth of the matter," but must instead "only determine whether there is a genuine issue for trial." *Evanston Ins. Co. v. OEA, Inc.*, 566 F3d 915, 919 (9th Cir 2009), citing *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999). The court must "view the facts in the light most favorable to the non-moving party and draw reasonable inferences in favor of that party." *Scheuring v. Traylor Bros., Inc.*, 476 F3d 781, 784 (9th Cir 2007), citing *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 255 (1986). However, a "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

2 - FINDINGS AND RECOMMENDATION

## UNDISPUTED FACTS

SDG filed a Concise Statement of Material Facts to which Chung filed no opposition. Therefore, pursuant to Local Rule 56.1(f), these facts are deemed admitted for purposes of this motion. Additional facts are taken from the parties' exhibits.

At all relevant times, SDG was a management consulting firm with its principal office in Palo Alto, California. Spetzler Decl., ¶ 2. Chung's husband, Eric Chung, was a full-time employee of SDG. Kirven Decl., ¶ 2. In September 2007, Mr. Chung urged SDG to hire his wife as an "outside contractor." *Id*. After he provided her resume to SDG, the company scheduled a series of interviews with Chung in Palo Alto. *Id*. On October 3, 2007, Chung was interviewed by four SDG partners, including SDG's Managing Director of Operations, Mary Lea Kirven. *Id* at ¶ 3.

On October 4, 2007, the four interviewers met and decided that Chung should not be hired. *Id* at ¶ 4. On October 5, 2007, at approximately 4:30 p.m., Kirven called Chung's cellular telephone. *Id* at ¶ 6. Chung did not answer the call, but Kirven left a voicemail message informing her of the decision and the general reason for it. *Id*. According to her confirming email sent shortly thereafter to the other SDG interviewers, she advised Chung that "it is the collective wisdom of the group that we should not make you an offer." *Id*, ¶ 6, Ex. 3. According to Chung, Kirven's voicemail message was "something to the effect of 'we are not going to move forward at this time.'" L. Chung Depo., p. 123.

Less than an hour later, at approximately 5:00 p.m., Chung and her husband arrived at SDG's headquarters and met with Carl Spetzler, SDG's CEO. Spetzler Decl., ¶ 3. At that meeting, both Chung and her husband expressed their vociferous disagreement with SDG's decision not to hire her. *Id*.

In late October 2007 or later, Mr. Chung reported to his wife that a SDG partner, Mazan Skaf, told him that no matter what Kirven had said in her voicemail message, he was planning to staff Chung as soon as an appropriate project became available. L. Chung Depo., pp. 193, 217; E. Chung Depo., pp. 167, 169, 187-88, 208. He also reported to his wife another discussion in October or November 2007 with Naoki Shimoda, a senior consultant with SDG, who expressed an interest in using Chung for a wind generation project, but was told not to do so by Kirven without giving any reason. L. Chung Depo., pp. 216-17; E. Chung Depo., pp. 168-69, 194-95, 208.

In his April 2008 resignation letter, Mr. Chung acknowledged that his wife had received Kirven's voicemail message shortly before their meeting with Spetzler "rejecting her from the outside consultant pool without explanation." Kirven Decl., Ex. 4, p. 4; L. Chung Depo., Ex. 17. Chung reviewed and approved her husband's letter before it was sent to SDG. L. Chung Depo., pp. 141-42. At that time due to her husband's resignation, Chung considered herself to be out of the running for a position at SDG. L. Chung Depo., pp. 216-17.

## FINDINGS

Chung commenced her action on October 8, 2008. SDG argues that the one-year statute of limitations in ORS 659A.875(1) bars her claim action because the discriminatory conduct occurred on October 5, 2007, when Kirven left a voicemail message for Chung. In response, Chung claims that the statute of limitations did not begin to run on October 5, 2007, because Kirven's voicemail message was unclear and she was still under consideration for the position with SDG several months later.

This court finds that the undisputed facts demonstrate that on October 5, 2007, Kirven unequivocally notified Chung that SDG was not going to hire her. Although the actual content

4 - FINDINGS AND RECOMMENDATION

of the voicemail message is disputed, Chung admits that Kirven informed her that SDG was "not going to move forward" with her application. Until recently Chung interpreted that message as a rejection by SDG. In each of her three complaints filed both in state court and in this court, Chung alleged that SDG rejected her "for the position on October 12, 2007." Mann Supplemental Decl., Ex. 1, ¶ 8; Ex. 2, ¶ 9; Ex. 3, ¶ 7. As she admitted in her deposition, the date of October 12 in her pleadings was a "calendaring error" and should have been October 5, 2007, the date she received the voicemail message from Kirven. L. Chung Depo., pp. 135, 189-90. Her lack of confusion as to the date of her rejection is evident by her meeting with Spetzler later that same day when she and her husband expressed their vehement disagreement with SDG's rejection of her as an outside contractor. Furthermore, Chung reviewed and approved her husband's April 2008 letter to SDG, which asserts that, on the way to her meeting with Spetzler on October 5, 2007, Chung received a voicemail message from Kirven "rejecting her from the outside consultant pool."

In response, Chung offers only her opinion that she never received any definitive outcome regarding her hire status and did not consider herself to be out of the running for a position at SDG until her husband resigned from the company in April 2008. Summary judgment cannot be defeated by subjective opinions which are unsupported by objective facts and conflict with prior statements. While the court may make reasonable inferences in Chung's favor, inferences cannot be drawn from conclusory statements or general averments. *Lujan v. Nat'l Wildlife Fed'n*, 497 US 871, 888-89 (1990); *Palucki v. Sears, Roebuck & Co.*, 879 F2d 1568, 1572 (7th Cir 1989) (age discrimination not properly inferred from observer's "gut feeling" about employer's intentions). Chung must instead "come forward with sufficiently 'specific'

5 - FINDINGS AND RECOMMENDATION

facts from which to draw reasonable inferences . . . ." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F2d 626, 631 n3 (9th Cir 1987).

Although Chung does not plead any estoppel theory, she appears to argue that the later discussions by her husband with various SDG personnel about possibly hiring her in the future served to toll or extend the October 5, 2007 date of rejection. In this diversity case, Oregon law controls the statute of limitations on Chung's state law claim. *Nevada Power Co. v. Monsanto Co.*, 955 F2d 1304, 1306 (9th Cir 1992). Under Oregon law, the statute of limitations begins to run from day the adverse employment decision is communicated to the employee and is not tolled by later representations that the employee might nevertheless be hired (or rehired). *Dobie v. Liberty Homes, Inc.*, 53 Or App 366, 632 P2d 449 (1981).

In *Dobie*, the plaintiff sustained a workplace injury and was off work for two days. On April 17, 1978, he returned to work, but was informed by the production manager that his employment was terminated. However, his immediate supervisor later told him he could perhaps be rehired when the company opened a new plant in January 1979. By March 1979 the plaintiff ceased his efforts for rehire at the new plant. He then filed a complaint with the Bureau of Labor on June 26, 1979, alleging injured worker discrimination. When defendant moved for summary judgment on the basis of the one-year statute of limitations, the plaintiff argued that his claim did not accrue until sometime after the new plant opened in January 1979 when it was clear that he would not be rehired. The court rejected that argument and held that any unlawful employment practice occurred when he was terminated on April 17, 1978. It also rejected his estoppel argument that the statute of limitations was tolled by his supervisor's statement that he might be rehired. Even if the plaintiff detrimentally relied on this statement, his "reliance ceased prior to the time the limitation period had run." *Id* at 372, 632 P2d at 452.

6 - FINDINGS AND RECOMMENDATION

Similar to the supervisor's statement as to the possible rehiring of the plaintiff in *Dobie*, the statements by SDG personnel that they might hire Chung for future projects do not toll or delay commencement of the statute of limitations. Even if Chung relied to her detriment on those statements, that reliance ended no later than April 2008 when her husband resigned from SDG, which was several months before expiration of the one year limitations period on October 5, 2008.

Because SDG communicated its rejection to Chung on October 5, 2007, more than one year before commencement of this action, this action is barred by the statute of limitations and SDG is entitled to summary judgment.

## RECOMMENDATION

SDG's Motion for Summary Judgment (docket #33) should be GRANTED, and judgment should be entered in favor of SDG dismissing this case with prejudice.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due December 15, 2009. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 25th day of November, 2009.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge